## THE SECURITY INSURANCE COMPANY ET AL. V. HARRY H. MICHAEL ET AL.

1. Where several insurance companies seek to have an appraisement, award and finding of the amount of loss, made at the instance of all jointly, set aside by reason of fraudulent misrepresentations of the assured, all must be joined as plaintiffs unless some refuse to join. Those who so refuse may, be made defendants upon allegations of the facts.

2. In such case all are parties in interest in the immediate relief sought, namely the setting aside of the joint award which is the basis upon which all are to be held to contribute proportionally to make good a common loss.

HOSEA, J.

Opinion on demurrers to petition and cross-petition.

Suit is by two of six insurance companies (the other four being made defendants) against the defendant firm, seeking to set aside an appraisement, award or finding, of the amount of loss, alleged to be incorrect, excessive and unjust through and by reason of fraudulent acts and fraudulent misrepresentations of the insured in and during the appraisement proceedings, which acts and misrepresentations are claimed to render the policies void.

It appears, inferentially at least, that the award was upon a joint submission in that behalf by all the companies concerned; and the four companies (or three of them) appear represented by counsel for plaintiffs and file cross-petitions following, *in totidem verbis,* the averments of the petition and asking independently the same relief.

The petition is demurred to for (1) want of jurisdiction as to subject-matter; (2) misjoinder of parties plaintiff; (3) same, as to defendants; and (4) want of facts sufficient, etc. And cross-petitions are also demurred to.

If, as I apprehend, the grounds stated all involve as a fundamental proposition the objection to the jurisdiction of equity in the premises, I think the demurrer is not well taken. It is fairly clear from the petition that the object is to bring under judicial inquiry fraudulent acts rendering

voidable an award or finding regular on its face; and to invoke powers peculiar to equity—should the facts be found as alleged—to annul and set aside this award which is a vital condition as to legal rights depending upon it. In such a case the equitable jurisdiction of the court is clear beyond question and the demurrer as to the first ground must be overruled.

But it also appears that the award is the result of the joint and concurrent act of all the insurers; and its effect, if valid, is to fix a basis upon which all are to be made contributors, in proportion, to make good a common loss. All are therefore parties in interest, by virtue of this joint relationship to the award, in the relief sought to be obtained; namely, the annulment of the award as a condition of their liability. The same reasons that justify the joining of two as plaintiffs require the joining of all.

As the demurrer is said to search the record, it is sustainable upon the ground of defect of parties plaintiff, rather than misjoinder. Section 5005 of the practice code requires parties joined in interest to be plaintiffs, except where they refuse to join, in which event, upon proper allegations they may be made defendants (Section 5007). But this was not done. The status here clearly shows that the cross-petitioners in fact consent and should be joint plaintiffs in the petition. As cross-petitioners they are not properly in the case and the cross-petitions are subject to be stricken from the files, but are not open to demurrer since it is not, properly speaking, a misjoinder as to them, not being real defendants.

For the reasons given the demurrers will be sustained in part, as to the petition, and overruled in part, with leave to amend petition in —— days; and overruled as to cross-petition. But as the situation requires a redrafting of the petition, including the cross-petitioners as plaintiffs, it is suggested that a more complete, succinct and exact averment of facts is desirable, showing more clearly the grounds of joint equitable relief and an appropriate prayer that the court may take cognizance of the matter and determine it as an entirety according to the facts as they may be found

upon final hearing, the plaintiffs submitting themselves to the jurisdiction for this purpose upon the theory that a court of equity having taken jurisdiction for one purpose will retain in the cause and administer full relief in the premises.

Demurrer sustained with leave to amend in ——————— days.

*Cabell & Kohl,* for plaintiff.
*Conner, Walker & Sparrow,* for defendant.

---

## STATE, EX REL WILSON, V. LEWIS, AUDITOR, ET AL.
### DISSENTING OPINION.*

1. Contracts made with tax "inquisitors" under the statutes in that behalf are invalid so far as they are drawn to have a prospective operation. The statute contemplates past and not future omissions; and such contracts are only justifiable when limited to such collections as the treasurer is unable to make after a full and unsuccessful exercise of all powers conferred upon him by law. Such statutes must be confined strictly to past forfeitures and can not be enlarged by construction. Only when public officers have in good faith exhausted their powers is the employment of private assistance justifiable.

HOSEA, J.

The question here is whether the contract made by the county officers with Morgenthaler as "tax inquisitor," under R. S., Section 1343-1 to 1343-4, on Sept. 17, 1902, is valid as a contract relating to tax omissions occurring in returns subsequent to its date; in other words, whether said law authorizes contracts having a prospective operation.

The constitutionality of the law in question having been adjudicated, various other questions arising upon this or a similar contract with Morgenthaler were disposed of by

---

*Affirmed 74 O. S., —.

this court in *McGoldrick* v. *Lewis*, 12 O. D., 46; but upon a suggestion arguendo in that case the court declined to pass upon this question because not raised by the pleadings.

From the majority opinion in the present case, holding that such contracts may have a prospective operation, I am constrained, notwithstanding my high respect for the views of my associates on the bench, to dissent; *first,* because the language of the statute seems to me to preclude such view, and, *second,* because, if the language were susceptible of the construction indicated, the general policy of the law is against it.

The language of the statute is as follows:

"(1343-1)   [*Authorizing employment of tax-inquisitors; their compensation.*]   The county commissioners, county auditor, and county treasurer, or a majority of said officers in any county, *when they have reason to believe that there has not been a full return of property within the county for taxation,* shall ·have power to employ any person to make inquiry and furnish the county auditor the facts as to any omissions of property for taxation and the evidence necessary to authorize him to subject to taxation any property improperly omitted from the tax duplicate," etc.

(1)   As the power to make such contract is wholly derived from the statute, the conditions and limitations of the power specified in the statute must be given effect. The subject-matter with reference to which the power is given in this instance is defined in the opening sentence of the act, stating a contingency which is the condition precedent to the exercise of the power, namely:

"When they have reason to believe *that there has not been a full return* of property within the county for taxation, they shall have power to employ any person to make inquiry," etc.

This language has obvious reference to an existing condition growing out of a past fact; namely, a condition arising upon one of the previous annual returns required by law.

The ordinary canons of construction require us to refer all relative words and expressions that follow later in the sentence, back to this dominant subject-matter; namely, to the certain specific return, made under the law, which the designated officers have reason to believe is not full and complete. So that the subsequent words, *"any omissions"* and *"any property improperly omitted,"* refer to omissions existing in the return already made; and there seems to me no warrant in the language of the act for any other inter-pretation.

(2) In tracing the history of the statute, I find nothing to suggest any intention of the legislature to extend the power of contracting to possible future omissions. The original statute of 1880 (77 O. L., 205) confined its oper-ation to omissions occurring prior to the passage of the act. In the special act of 1885, relating to Hamilton county (82 O. L., 152), the language is: "Any property improp-erly omitted," which is a common mode of expressing an existing condition, and does not refer to a future possibil-ity. In the present act, passed in 1888 (85 O. L., 170), the limitation is still more specific by stating a condition precedent, namely, "when they have reason to believe that there *has not been* a full return, " etc., which necessarily relates to a past event constituting an existing condition with sole reference to which the power is granted.

(3) Neither do I find in the opinions of the courts upon analogous statutes any support for the enlargement of the present statute by construction.

A question very similar to the present one arose before me in the case of *The State, ex rel,* v. *Gibson,* under the statute authorizing employment of a private individual to assist the treasurer in the collection of delinquent and for-feited taxes. The court held that the contract must be confined strictly to past forfeitures, which was affirmed by the higher courts. *State, ex rel,* v. *Gibson.* Court Index, July 23, 1903; affirmed in General Term, 49 O. L. B., No. 27, p. 513; affirmed by Supreme Court, 70 O. St., 424.

A clearly analogous case is that of *Commissioners* v. *Arnold,* 65 O. St., 479, based upon the statute authorizing

employment of assistance in the collection of delinquent chattel taxes. The Supreme Court lay stress upon observance of statutory conditions, and incidentally lay down a principle having a pertinent application to the present case. In the opinion it is said:

"Statutes enacted for the protection of the public revenue are, usually, not merely directory but mandatory. * * * Each delinquent list must be read, and an employment made to collect the same; but there can be no employment of collectors to collect future lists. *The employment of such collectors can not be turned into an office to be held to the end of the treasurer's term, or for any definite period.* His employment is to collect the delinquent list which has been read, or some part thereof, and when that is done his employment ends."

While the opinion is, perhaps, confined to a discussion of the particular law, yet it is impossible to read its clear and forcible language without feeling that beyond its particular application, the court is stating, in effect, a rule of public policy inconsistent with any enlargement of such powers by construction to include future contingencies; and the clear intimation is that such construction would create an office auxiliary to that of the elective office, for the performance of duties with which the officer is charged by general laws.

(4) The foregoing considerations suggest a broader view involving questions of a general public policy.

There can be no question as to the general purpose of our system under which all duties of a public character are assigned to duly elected public officers. In the matter of taxation, the citizen is required, under suitable penalties, to return his property for taxation to assessors who have power to correct returns and supply omissions, as to which the auditor has full power of investigation. The auditor is also given a special compensation to bring omitted property upon the duplicate.

I do not concede that the duties of the auditor are perfunctory or merely clerical. In *Probasco* v. *Raine, Audi-*

*tor,* 50 O. St., 378, the Supreme Court has spoken upon this subject as follows (391):

"To have. equality in taxation all property must be brought upon the duplicate. Some officer must be authorized and empowered to cause all property to be listed for taxation. Such officer must be paid for his services either by fees or salary. The Legislature has full power under the Constitution to say what officer shall perform such duties and in what manner he shall be paid. It has enacted that such duties shall be performed by the auditor, and that he shall be paid as provided in Section 1071," etc.

Contracts of the nature here in question find their justification in the increased complexity and amount of modern business interests and investments and the facilities thereby afforded for escaping taxation; and, so far as they are confined to residual matters which the ordinary public officers have failed to reach and accomplish, after diligent efforts made in good faith to discharge their official duties in the premises, the employment of private assistance is proper and reasonable. Such seems to have been the view of courts in passing upon analogous contracts; but they have confined them strictly to such residual matters. To go further and enlarge the power to include future contingencies, opens a door to obvious evils that a correct public policy must avoid. It is a step backward in the direction of farming out the collection of the public revenues to private interests, that history warns us against; and I find no authority in this case for supposing that it was the intention of the Legislature to take this step.

For the reasons given, I think the demurrers should be overruled.

*Theodore Horstman,* for plaintiff in error.
*Alfred B. Benedict,* for defendant in error.